IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal Case No. 2-09-273 |
| ) | |
| ) | |
| v. ) | |
| ) | |
| ) | HONORABLE JUDGE |
| ) | Joy Flowers-Conti |
| ) | |
| ERIN D. HOUSE, ) | |
| Pro Se Defendant ) | |

## MOTION FOR LEAVE TO FILE A SUPPLEMENT TO MOTION TO SUPPRESS PUSUANT TO FEDERAL RULES OF CRIMINAL PROCEDURE 15(d) AND SUPPLEMENT TO MOTION SUPPRESS

And now comes Erin D. House, Pro Se Defendant, who respectfully moves this Court to grant the Defendant leave to file the instant Supplement to the Motion to Suppress (Doc# 313) and attached exhibits.

## I. MOTION FOR LEAVE TO FILE A SUPPLEMENTAL TO MOTION TO SUPPRESS

1) On August 16, 2012, this Court entered a text/minute order setting forth, in part, that "[t]he government will disclose the narrowed pen register data, if possible, as set forth more fully on the record." The government subsequently disclosed to the Defendant what was purported to be the narrowed pen register data.

2) After the Defendant reviewed the records disclosed by the government, it was determined that a vast number of the recorded instances of "calls" set forth in many of the affidavits of probable cause were, in fact, non-existent, and/or grossly inconsistent with, the government's own pen registry records. (FN 1)

1

3) In light of the clear discrepancies between the governments own purported pen registry records and that of the purported instances of "call[s] set forth in the affidavits of probable cause, the Defendant sought an expert too properly analyze the government's purported "pen registry" data and confirm his findings. (FN 2).

4) The Defendant engaged Ben Levitan ("Levitan" or "Mr. Levitan") to review the data, a telecommunication expert who has previously testified in relation to other communications issues in the instant case. Levitan subsequently confirmed the Defendant's preliminary findings.

5) In November of 2012, the Defendant served Sprint/Nextel with a subpoena in order to obtain a true copy of the service provider's records pertaining all of the calls in question in order to compare their records to the government's records, and to determine which calls are referred to in the affidavits of probable cause. (FN 3) On December 12, 2012, the Defendant received a CD copy of the Sprint/Nextel call detail records.

6) Review of the information provided by Sprint/Nextel revealed that a significant number of the telephone calls on the Sprint/Nextel calls detail records did not match the government's purported "pen registry" data.

---

1 The Defendants, after requesting this information for the past nearly four years, only received these records when a substitute AUSA took over temporarily for AUSA Amy Johnston who, prior to leave "strenuously opposed" turning over these records.

2. In many instances the government denoted both push-to-talk communications and communications occurring over a 10 digit phone number as "call[s]" or "Phone call[s]" The Defendant has advanced a Constitutional and Statutory challenge to the interceptions of push-to-talk (PTT) communications due to the government failing to identify the proper "facility" in the application 09-135(b). See Title 18 U.S.C section 2518(1)(b)(ii) and the Defendant's Motion to Suppress (Doc# 313)

3. Joined Defendant Blackwell also subpoenaed Sprint/Nextel after finding similar problems with the government's "pen registry" records when compared to several of the allegations in the affidavits of probable cause.

2

Additionally, a significant number of the particular times of "calls" alleged in reference to the calls outlined in the affidavits of probable cause did not match the majority of the records from the government's records.

7) The government's records indicated 3,431 purported "pen register". The records provided to the defendant by Sprint/Nextel reported 2,914 call detail records. A significant difference of 517 calls. More problematic, however, is that expert Mr. Levitan also reports that both independent sets of records matched up a mere 2.9% of reported instances of the calls. **(See Report attached herein as Exhibits #1 & #2)(FN 4)**

8) Even more problematic, when comparing the government's purported "pen register" records for PTT to the instances of "calls" outlined in many of the affidavits of probable cause utilized in the instant case, the number of discrepancies are disturbing.

9) The following list is an example of the government's own data when compared to one Tile III Affidavit for Probable Cause, 09-135(c), **(WDPA "Affidavit")**. The Affiant outlined a total of 35 "calls" (307 PTT sessions), alleged to have occurred on July 16, 2009. The government's own records match only 1 call (1 PTT session), of the 35 calls (307 PTT sessions), alleged in the 09-135(c) affidavit to have occurred on that day. **(See excerpt of government's "pen registry" data for 323.208.0259 on July 16, 2009, attached herein as Exhibit #3) (A true copy of the 09-135(c) affidavit's excerpt concerning the July 16, 2009 calls is attached as Exhibit #4)**

---

4. Ben Levitan is prepared to offer testimony in regards to several facts outlined in herein and is currently under subpoena to testify

3

| PURPORTED TIME OF CALL IN AFFIDAVIT | PARAGRAPH # IN AFFIDAVIT | NUMBER OF PURPORTED SESSIONS (CALLS) |
|---|---|---|
| 2:49:00 PM | 34 | 12 |
| 3:05:00 PM | 36 | 4 |
| 3:11:00 PM | 37 | 5 |
| 4:43:00 PM | 40 | 14 |
| 5:09:00 PM | 42 | 40 |
| 5:20:00 PM | 43 | 14 |
| 5:23:00 PM | 43 | 8 |
| 5:26:00 PM | 43 | 6 |
| 5:27:00 PM | 43 | 1 |
| 5:28:00 PM | 43 | 6 |
| 5:29:00 PM | 43 | 2 |
| 5:30:00 PM | 43 | 9 |
| 5:32:00 PM | 43 | 6 |
| 5:35:00 PM | 44 | 7 |
| 5:41:00 PM | 44 | 4 |
| 5:49:00 PM | 44 | 5 |
| 5:55:00 PM | 45 | 5 |
| 5:56:00 PM | 45 | 1 |
| 6:45:00 PM | 50 | 5 |
| 6:50:00 PM | 51 | 3 |
| 7:42:00 PM | 52 | 3 |
| 9:42:00 PM | 53/54 | 6 |
| 10:33:00 PM | 55 | 6 |
| 10:53:00 PM | 58 | 4 |

10) The Defendant submits the facts outlined in the hearing conclusively establishes the necessity for a franks hearing in the instant case. (FN 5) The Defendant has made several preliminary showings in prior proceedings that false statements were knowingly and intentionally, or with reckless disregard for the truth, made by the affiant in many of the warrant affidavits in addition to the foregoing allegations. (FN 6)

---

5 Noting that government "strenuously opposed" (doc # 566) the Defendants Motion To Compel seeking, inter alia, to compel the government to turn over these records. The defendants have remained in prison nearly 4 years and served with three separate indictments, the latest of these indictments occurring just days after this court ordered the government to turn over the records at issue in the instant supplement A Motion to Dismiss (Doc # 601) alleging in part, that the government was punishing the defendant for requesting this Court compel the government to disclose these narrowed "Pen Registry" records was filed by this Defendant. The Defendant submits the government should be sanctioned for overtly attempting to hide this information from the defense. Furthermore, the governments "Pen Registry" records for PTT shows that a number of calls alleged in the affidavit did not happen over the device that they were authorized to intercept.

4

11) The Defendant asserts the "conspiracy" outlined in the second superseding indictment includes a time frame the government must prove. There are several material facts concerning cell site location information ("CSLI") of the Defendant communication devices at particular times of the "calls" throughout the conspiracy. Accordingly, the time of the purported "calls", the source, the device targeted by the governments interception, the location of the device at the time of the call, and the legal authorization to intercept the "calls", are material facts the Defendant is now entitled to properly determine the propriety of the warrants in the instant case (FN 7).

12) The foregoing facts beg to question the reliability of all the government's electronic records pertaining to telecommunications. In the event this court does not order a Frank's hearing, the Defendant asserts that an immediate evidentiary hearing is necessary to determine the reliability of the Government's records. Additionally, the substantial showing herein warrants expanded discovery to determine, inter alia, how it is **the government recorded and tracked the locations of calls Sprint/Nextel has no call detail record of ever occurring.**

13)    Furthermore in the event that this court does not order a Franks hearing, the Defendant request suppression of evidence due to unlawful interception of

---

6. Other evidence misrepresentations of facts that cannot be explained as anything but deliberate include: "6 calls" between Blackwell and Paul on Paul's toll records, and the "it's on its way" statements in many of the affidavits of probable cause. In fact, the subpoenaed Sprint/Nextel records bring to light additional evidence militating for a Franks hearing it is notable that the government pointed out the "6 calls" as materially supporting probable cause during the evidentiary hearing to take the Courts attention of the "it's on its way" statements. Noting the Court correctly pointed out the "6 calls" was subject of another alleged deliberate misrepresentation by the Affiant. The affidavit concerning the "6 calls" between Paul and Blackwell set forth these calls as if they occurred contemporaneously with Paul's incident of arrest while transporting a concealed load of narcotics in Illinois in June 2009. In fact, there are no calls occurring on Paul's toll records between Blackwell and Paul as alleged in the affidavits.

7. It is clear the government has disclosed intercepted calls. What is not clear is what calls from the devices were intercepted Sprints records rules out a large portion of the governments intercepts as not occurring at all, at the least, not occurring when the government purported them to have occurred and/or on the devices the Government claimed to have authorization to intercept

5

Defendant's communications, based on the fact that the government's "pen registry" records shows that calls never occurred as was represented in their Affidavits.

14) The Defendant respectfully request this court grant the defendant Leave to File a Supplement to the Motion to Suppress.

## II. SUPPLEMENT TO MOTION TO SUPPRESS

### a. A Franks Hearing Is Required For The Governments Pen Register Data

1) In order to obtain a Franks hearing a Defendant must make substantial preliminary showing that: (1) The affidavit in support of the warrant may have been deliberately false or that it might demonstrate a reckless disregard for the truth: and (2) any challenged statements or omission was essential to the Magistrate finding of probable cause. Franks 438 U.S. at 155-56: (United States v. Wade, 2012 U.S. Dist LEXIS 40754, 3rd Cir.): Sherwood v. Mulvihill, 113 F.3d 396 (3rd Cir 1997): United States v. Calisto, 838 F.2d 711,714-16 (3rd Cir. 1988). See also Orsatti v. New Jersey State Police, 71 F.3d 480 (3rd Cir. 1995)

2) In this case we have a number of affidavits that based on the governments pen registry records that's alleged to have came from Sprint/Nextel containing unlawful communications that was represented to the Court as authorized intercepts to obtain judicial approval for orders and warrants. ( FN 8)

3) In **Section I** of this motion the Defendant has presented an example of one affidavit to compare to the governments pen registry record, however, even worst then what the Defendant presented in **Section I**, further check of the pen registry record

---

8. These calls are represented in the following affidavit's: Mag No 09-371; 09-372; 09-444; and Title III affidavit 09-135(c) in the Western District of Pennsylvania, and 1:09 mj 9078 and 1:09 mj 9081 in The Northern District of Ohio.

6

for 323-208-0259 will show that "NO" PTT calls were made from that device prior to July 16, 2009, 11:35:22, even though the affidavit's represents calls from the 323-208-0259 PTT to this Defendant's PTT as early as July 13, 2009,

4) Listed below is the governments pen registry data for PTT on 323-208-0259, attached as **Exhibit #3** and excerpts from the 09-135 (c) affidavit concerning calls made prior to July 16, 2009, 11:35:22, attached as **Exhibit #4**.

| PURPORTED TIME OF CALL IN AFFIDAVIT | PARAGRAPH # IN AFFIDAVIT | NUMBER OF PURPORTED SESSIONS (CALLS) |
|---|---|---|
| 9:38:00 AM; 7/13/09 | 19 | 11 |
| 2:53:00 PM; 7/14/09 | 21 | 12 |
| 7:44:00 AM; 7/15/09 | 22 | 6 |
| 8:28:00 AM; 7/15/09 | 23 | 9 |
| 6:33:00 PM; 7/15/09 | 24 | 16 |
| 7:39:00 PM; 7/15/09 | 25 | 16 |
| 11:03:00 PM; 7/15/09 | 26 | 9 |
| 7:38:00 AM; 7/16/09 | 29 | 7 |
| 7:49:00 AM; 7/16/09 | 30 | 8 |
| 8:32:00 AM; 7/16/09 | 32 | 4 |

5) Those calls are not the only issue, but as been previously noted in Section I, the PTT calls represented by the affiant in the affidavit are all inconsistent with the governments pen registry records

6) Furthermore, this Defendant is prepared to proffer to the Court that he has never communicated with Blackwell from his 562-307-2726 device that the government alleges Blackwell communicated to him on.

7) Due to these communications, the affiant was able to obtain judicial approval to obtain warrants and orders used to gather evidence that is being used against the Defendant.

7

8) The Defendant incorporates by reference the allegations and facts referred to in Paragraph 1 – 14 as though they were fully set forth herein.

9) The discrepancies in the government's "Pen Registry" records prove that the government did not rely on Sprint/Nextel records at all to compose the affidavits in the instant case. In a recent government response (Doc # 678) to a Motion filed by this Defendant (Doc # 677), the government stated the following:

> The FBI did not utilize their "own pen register or trap and trace device", but rather they obtained the data from the service provider (Sprint). This is abundantly clear simply by reviewing the application and orders associated with the Pen Registers filed at Mag Nos 09-294 and 09-371 In Other words, although the agents received the data on a computer located at the FBI, the data originated from the Service Provider (Sprint)

10) The Defendant asserts that it is not "abundantly clear", as the government suggest. In the event the government's claims its response (Doc # 678) is, in fact true, then it is utterly impossible to interpret the discrepancies in the records and affidavits as anything other then a deliberate misrepresentation of the information set forth in the affidavits.

11) It is no longer a mass paranoia or conspiracy rhetoric when a criminal defendant, or even a law abiding citizen alleges that the government is actively utilizing devices and techniques that are capable of intercepting communications, tracking cell phone locations in real time, and trapping the pen registry of calls received and transmitted from any American Citizen's communication device without any judicial oversight. (See Reuters News Story "Exclusive: IRS manual detailed DEA's use of Hidden Intel Evidence", Dated Wednesday, August 7, 2013. Also See Department Of Justice Electronic Surveillance Manual pages 41 – 45, attach herein as Exhibits # 5

8

and #6. Also see Affidavit Of Supervisory Special Agent Bradley S. Morrison, attached as Exhibit #7, describing FBI acknowledgement of equipment capable of tracking and intercepting communication content of wireless devices). It is now flaunted as a acceptable investigative techniques and tools that is utilized on a large scale as standard procedure by law enforcement agencies, however, denied by law enforcement when the existence of its use would render evidence inadmissible. The proof that the government engages in this constitutionally impermissible conduct is now admitted and defended by the government openly in the public domain. **(FN 9)** The government itself does not deny the existence of the constitutionally questionable use of these devices or techniques to capture information or communication content straight from a users communication device without judicial authorization, nor deny that they are utilized against domestic non-terrorist criminal cases. Indeed, the government only denies the existence of these techniques when it helps the government convict a criminal defendant and hides the true methods used by law enforcement. Here, the end cannot be permitted to justify the means.

12) The records disclosed by the government shows conclusive evidence that another interception device was, in fact, used to capture the pen registers of the Defendant's in the instant case. It is without question that the government does attend to use the existence, timing, and intercepted content of at least some of the calls during trial.

---

9. See Forbes April 2012 Article. "These Are The Prices AT&T, Verizon and Sprint Charge For Cell phone Wiretaps" concerning phone services providers charging customers a wiretap fee to recover the expenses the Government forces the service providers to incur. The article set forth that: "information the ACLU received in response to a FOIA) show a pattern of police tracking cell phone locations and gathering other data like call logs without warrants, using devices that impersonate cell towers to intercept cellular signals, and encouraging officers to refrain from speaking about cell-tracking technology to the public, all detailed in a New York Times story (Police are Using Phone Tracking as a Routine Tool, March 2012).

9

13) Due Process demands that the government disclose what the make, model, and technical data information pertaining to the device utilized in the instant case clearly there are gross inconsistencies in the governments purported "pen registry" data, bringing the technique and device the government utilized in the investigation into the ambit of Brady and Rule 16 obligations.

14) The Defendant submits he has standing to challenge calls relating to communications from his communication device. With these records the Defendant has made the necessary substantial preliminary showing that information contained in several of the material facts outlined in the affidavits of probable cause was misrepresented, either deliberately or with reckless disregard for the truth. This information was material to the determination of probable cause and, if the Court strikes this information from the affidavits, the remaining information within the four corners of these affidavits will fail to support any reasonable Courts determination that probable cause existed, suppressing any and all "fruits" that were directly or indirectly derived therefrom.

15) At a bare minimum, the Defendant is entitled to a evidentiary hearing under Franks vs. Delaware to probe the who, what, when, where, and how of the governments pen registry records.

b. **Unlawful Intercept Of Push-To-Talk Communications**

16) On July 8, 2009, the **Honorable David S. Cercone** authorized interception from Sprint/Nextel for law enforcement of telephone facility 323-208-2059 wire communications. (See Gov. Appendix at. Doc # 403, Index at Tab 3) The wireless

10

device was being used by Mr. Blackwell, and the authorization for interception was authorized for a 30 day period.

17) The government represents that on **July 13, 2009, July 15, 2009,** and **July 16, 2009**, at various times the Defendant's wireless device **(562-307-2726)** communicated with Blackwell's **(323-208-2059)** device, therefore pursuant to the order of authorization from the court, lawfully intercepting the Defendant's communications.

18) Based on the governments pen registry records, that's alleged to be from Sprint/Nextel, the records establishes that these communications did not in fact happen over the device the government had Court authorization to intercept, therefore the communications were indeed unlawfully intercepted in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § § 2510-2520 ("Federal Wiretapping Act"), and the Fourth Amendment of the United States Constitution, rendering any and all evidence inadmissible that was derived from the illegality of the unlawful intercepts.

19) The **Fourth Amendment reads**:

"The right of the people to be secure in their persons, houses, papers, and effects, Against unreasonable searches and seizures, shall not be violated, and no Warrants Shall be issued, but upon probable cause, supported by Oath or Affirmation, and Particularly describing the place to be searched, and the persons and things to be seized."

20) In **Katz vs. United States, 389 U.S. 347, 357 (1967)**, the Supreme Court has quite plainly stated that "the Constitution requires 'that the deliberate, in partial judgment of a judicial officer... be interposed between the citizen and the police.'" (quoting **Wong Sun vs. United States, 371 U.S. 471, 481-82 (1963))**.

11

21) In Katz, the Court reversed a conviction based on evidence obtained by the government by agents listening to and recording the defendants telephone conversation without prior judicial authorization. **Id. at 356.** Lack of judicial authorization meant the agents " were not compelled... to observe precise limits established in advance by a specific court order," and therefore constitutes a search "conducted outside the judicial process, without prior approval by judge or magistrate" that is " per se unreasonable under the Fourth Amendment." **Id. at. 356-357**

22) Likewise, Title III was enacted by Congress with strict requirements for the government to follow in order to intercept wire communications to protect the privacy of it's citizens from government intrusion. These requirements are clear without ambiguity, and is thoroughly described within the sections of the Title III chapters. (See 18 U.S.C. §§ 2510-2520)

23) In this case, the governments represented pen registry records from the service provider (Sprint/Nextel) shows that the devices the government represents were lawfully intercepted did not make calls to the Defendant as they represented in any of their affidavits mentioned in **Footnote 8.**

24) Blackwell was known by the government to be the possessor of numerous cell phone's. In addition to that fact, the Defendant will proffer that he never communicated to Blackwell from the device they alleged in their affidavits. The governments own records supports that fact.

25) **Exhibit #3**, attached herein, the governments pen registry records

12

compared to the affidavits referred to in **Footnote 8**, establishes the fact that no calls were made to Blackwell by this Defendant on the device the government had authorization to intercept. The Defendant does indeed have a CD of recordings between himself and Blackwell that was provided by the government, however, those recordings do not reflect that the communication happen over the cell phone that the government had court authorization to intercept.

26) However sinister this maybe, the fact behind this illegality is that the government knew the communications were unlawfully intercepted, attempted to hide this fact from the Court and all the Defendant's in this case, and falsely represented to the Court that those communications were lawfully obtained, in violation 18 U.S.C. § 3504(a) (1), amongst other laws.

27) Indeed, based on the facts of these blatant Constitutional and Statutory violations, the Defendant seeks the simple remedies of suppression of all evidence derived therefrom pursuant to 18 U.S.C. §§ 2515 and 2518(10) (a) (i)(iii).

Respectfully Submitted,

/s/Erin D. House
ERIN D. HOUSE, Pro Se Defendant
Reg. No. 04568-041
NEOCC
2240 Hubbard Rd.
Youngstown Ohio 44505

13

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2009, a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Erin D. House
ERIN D. HOUSE, Pro Se Defendant
Reg. No. 04568-041
NEOCC
2240 Hubbard Rd.
Youngstown Ohio 44505

14

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal Case No. 2-09-273 |
| ) | |
| vs. ) | |
| ) | HONORABLE JUDGE |
| ) | Joy Flowers-Conti |
| ERIN D. HOUSE, ) | |
| Pro Se Defendant ) | |

## PROPOSED ORDER TO THE COURT FOR MOTION FOR LEAVE TO FILE A SUPPLEMENT TO MOTION TO SUPPRESS PUSUANT TO FEDERAL RULES OF CRIMINAL PROCEDURE 15(d) AND SUPPLEMENT TO MOTION SUPPRESS

And Now, this _____ day of August 2013 in consideration of Pro Se Defendant Erin House's motion for an order to Leave To File A Supplemental Motion To Suppress is hereby GRANTED.

Being fully advised of the Defendants Supplemental Motion To Suppress, it is hereby ORDERED that the motion be GRANTED as follows: (a) That a Franks Hearing be ORDERED In Re: Governments Pen Register Data: (b)That The Defendants Push To Talk Communication was Unlawfully Intercepted, and it is FURTHERED ORDERED that Any and All Evidence Derived Therefrom be Suppressed.

DONE and ORDERED this _____ day of _____, 2013

_____
The Honorable Joy Flowers Conti
United States District Judge

1