JERRY KAPLAN, ESQ., CA Bar No. 49142
JOSEPH BENINCASA, ESQ., CA Bar No. 251347
KAPLAN, KENEGOS & KADIN
Attorneys at Law
9150 Wilshire Boulevard, Suite 175
Beverly Hills, California 90212
Telephone:  (310) 859-7700
Facsimile:  (310) 859-7773
Email:  kapkenkd@pacbell.net

Attorneys for Defendant
MICHAEL BLACKWELL

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  CR-10-021-JFC; |
| | ) | CR-09-273-JFC |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **SUPPLEMENT TO MOTION TO** |
| | ) | **SUPPRESS EVIDENCE OF ILLEGAL** |
| | ) | **SEARCH; REQUEST FOR FRANKS** |
| MICHAEL BLACKWELL, et al. | ) | **HEARING** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**<u>INTRODUCTION</u>**

Exactly four years and two weeks ago, defendants Michael Blackwell and Erin House were arrested and charged with drug trafficking and conspiracy in violation of 21 U.S.C. §§ 841 and 846, along with seven other defendants (one defendant, Dontae Chambliss, was charged in the Northern District of Ohio).  All defendants excepting Mr. Blackwell and Mr. House have pleaded

guilty.  Three years after the initial charges were filed,
defendant Blackwell was charged by superceding indictment with an
additional count of possession of silencers in violation of 18
U.S.C. §924.  Numerous pretrial motions have been filed by
defendants, including motions to suppress due to illegal searches
and motions to compel production of evidence.

Defendants have long maintained that, in addition to other
government violations of law, they were illegally tracked through
their cellular phones.  The government, through FBI agents under
oath and its attorneys in the United States Attorney's Office,
has continuously and adamantly denied partaking in warrantless
wiretapping or tracking.  Indeed, the government has, at times,
outright ridiculed defendant House, acting *in propia persona*, for
seeking to compel the government to produce evidence that would
reveal its unconstitutional investigation.  Defendants now
finally have concrete evidence that the government engaged in
exactly the type of illegal activity they've been denying and
hiding for four years.

**II.**

**THE GOVERNMENT'S PEN REGISTERS**

**A.   Pen Registers Contain Area Code 600 Numbers That Were Used
      to Illegally Track Defendant**

On December 3, 2012, the government finally produced to
defendant Blackwell the pen/trap and trace records that were
allegedly produced by Sprint during the wiretapping of his

**MEMORANDUM IN SUPPORT OF SUPPLEMENT TO MOTION TO SUPPRESS
EVIDENCE OF ILLEGAL SEARCH; REQUEST FOR FRANKS HEARING**

1  cellular phones.  (Exhibit A).[1]  A comparison of these records to
2  the Call Detail records produced pursuant to subpoena directly
3  from Sprint (Exhibit B) conclusively show that not only was the
4  government using its own equipment to tap defendants cellular
5  phones – contradicting the government's long standing contention
6  – but further, that the government had been illegally tracking
7  defendants using a surreptitious service that was undetectable by
8  Sprint.  (Expert Report, Exhibit C).

9       The government used an area code 600 number to "ping"
10 defendants, giving the government their location without actually
11 ringing the telephone or creating a Call Detail record at Sprint
12 – essentially, creating a zero-second record that only showed up
13 on the government pen register.  Using this technique 587 times
14 over the course of 111 days, the government secretly tracked at
15 least a U.S. Citizen without a warrant.  587 zero-second calls
16 from the same phone number that doesn't exist.

17      In addition, the pen register shows 40 "hard" pings,
18 completely unauthorized, that were also executed on the push-to-
19 talk facility of Mr. Blackwell's phone.  (Exhibit D).  The
20 existence of these pings has been denied directly to the Court
21 and to defense counsel.

22      A recent news story published by Reuters shows that a
23 Special Operations Unit in the DEA has been doing "classified"
24 investigations that have led to "tips" to other law enforcement

25

26      [1]Exhibits will be sent under separate cover due to volume of records.  Defendants' Expert
27 Report will be emailed to the government at the time of filing.

28

**MEMORANDUM IN SUPPORT OF SUPPLEMENT TO MOTION TO SUPPRESS
EVIDENCE OF ILLEGAL SEARCH; REQUEST FOR FRANKS HEARING**

1   (Exhibit E).  Law enforcement would be directed to then

2   "recreate" an investigation to legalize the evidence that had

3   been obtained illegally.  Originally, this unit was set up to

4   combat Latin American Drug Cartels, however, it was expanded to

5   include investigations of U.S. Citizens.  The Special Operations

6   Unit operates out of an undisclosed location in Virginia.  Not

7   coincidentally, the source of the tracking in this case traces to

8   Booz Allen, a private corporation in Virginia that contracts with

9   the government to execute wiretaps and is the same corporation

10  that did the 40 unauthorized hard pings of Mr. Blackwell's phone

11  for the government.

12      This is not the first time the government has been shown to

13  have both the capacity and the willingness to track persons

14  without a warrant using their own equipment outside the knowledge

15  and facility of private telecommunications corporations.  In

16  United States v. Rigmaiden, et al. out of the United States

17  District Court for the District of Arizona, Case No. 2:08-cr-

18  00814-DGC, the government admitted to using their own equipment

19  to track that defendant without his knowledge. (Doc. 592-3).

20      This is contrary to Special Agent Sandra Maier's testimony

21  that it was technologically impossible to track the defendants

22  without a court order and the assistance of the telephone

23  company. (Reporter's Transcript of December 19, 2011, Hearing

24  37:11-18).  Defense expert Ben Levitan will testify that the same

25  or similar technique of tracking appears to have been conducted

26  in this case and that, without a doubt, the pen register records

27

28                              4

1  produced by the government are not records produced by Sprint.

2  **B.   Pen Registers From Government Do Not Match Call Detail**

3  **Records From Provider**

4  Aside from the fact that the pen register data produced by

5  the government shows they were illegally tracking defendants, the

6  records are unreliable.  According to Mr. Levitan's analysis, 97%

7  of the pen register data does not match the Call Detail records

8  within the standards demanded by Congress.  There are calls

9  present in the pen register that are not present in Call Detail

10 records.  The times are off, sometimes by huge amounts.  Some

11 calls are completely absent.  Most significantly, the calls on

12 the pen registers that roughly correlate to calls in the Call

13 Detail records consistently begin recording *before* the Call

14 Detail record begins, i.e., the interception by the government

15 takes place prior to Sprint receiving the call.  Instead of

16 Sprint sending the pen register data to the government, the

17 government intercepts the data first on their own device and then

18 sends it to Sprint.

19 The fact that the pen registers are now completely

20 unreliable presents an even more significant problem.  Since the

21 government pen register records are unreliable, the call detail

22 records from Spring are the *only* records that can be used to

23 validate the statements in the search warrant affidavits.

24 Unfortunately, this means that the Push-to-Talk calls can not be

25 used at all, since the Push-to-Talk records from Sprint have now

26 been destroyed.

27

28
**MEMORANDUM IN SUPPORT OF SUPPLEMENT TO MOTION TO SUPPRESS
EVIDENCE OF ILLEGAL SEARCH; REQUEST FOR FRANKS HEARING**

**C.    Further Evidence Push-To-Talk Is A Separate Facility**

Defendants subpoenaed complete call detail records for defendants' cellular phones, including push-to-talk records ("PTT").  However, Sprint only provided records from the cellular phone facility.  When questioned by defense counsel regarding the lack of PTT records, agents at Sprint informed counsel that the PTT records had been destroyed since call detail records are only kept for 18 to 24 months.  When questioned about why the cellular calls were still in existence while the PTT calls had been destroyed, the agent at Sprint opined that there must have been an order to retain only those records.  In this case, it appears that regular cellular phone records were authorized to be recorded and retained, but PTT calls were not, since they are separate facilities that require separate designation on wiretap orders.

**D.    Government Pen Registers Don't Match The Affidavit**

Finally, a review done by Mr. House and filed in his supplement shows that the government consistently misstated their own records or completely invented dates, times, and phone calls in their affidavits for warrants and wiretaps.  A full analysis and Franks hearing must be conducted for every mention of a phone call in every affidavit, and compared to the true Call Detail record, to determine what must be excised from each affidavit. The PTT calls must be completely excised, since there are no longer reliable records in existence.

///

1                                    **III.**

2                      **THE CALIFORNIA SEARCH WARRANT AFFIDAVIT**

3    **A.    Affiant Admits to "Geo-Location" Tracking of Blackwell**

4         The Second Superceding Indictment charged Defendant

5    Blackwell with possession of silencers found pursuant to search

6    warrant at his alleged residence in Downey, California.  The

7    warrant was executed at the same time the defendants were

8    arrested in Cleveland, Ohio.  In the affidavit, Special Agent

9    Jeffery Bennett states that "Your affiant and other agents have

10   obtained an order authorizing the provision of geo-location

11   information with respect to [the cellular phone number associated

12   with defendant Blackwell ending in 0259]."  (89:88).  This

13   statement directly contradicts assertions made by Pittsburgh FBI

14   agent Sandra Maier as well as the United States Attorneys

15   assigned to this case, who have repeatedly stated that Mr.

16   Blackwell was not the subject of ping or tracking orders.

17   According to the government, only historical Cell Site Location

18   Information ("CSLI") based on Pen Register Data, i.e., data

19   acquired only when Mr. Blackwell made or received calls on his

20   phone, was ever used to determine the defendant's location.

21        Defendant Blackwell has, on more than one occasion, asked to

22   see all applications and orders for wiretaps, geo-location

23   tracking, pen register data, etc.  The government denied that any

24   such orders existed.  Clearly, either Agent Bennett lied in his

25   affidavit or the United States Attorneys office in Pittsburgh has

26   withheld evidence from the defendant for more than four years

27

28                                    7

while he sit in prison.

**B.    Agent Maier Misinformed Agent Bennett in Order to Have Him Search the Downey Residence**

Also in the California Search Warrant, the affiant states that Agent Maier informed him that a review of CSLI records were "consistent" with the Downey residence being Mr. Blackwell's "primary residence."  However, a review of the Call Detail records shows no substantial difference between calls made at that residence and other locations in California, including other properties the warrant associates with Mr. Blackwell.

Agent Bennet also stated that unnamed agents/local law enforcement officers "surveilled" Mr. Blackwell from Los Angeles International Airport ("LAX") to the Downey residence after Mr. Blackwell allegedly arrived at LAX on the evening of August 20, 2009/early morning of August 21, 2009.  However, the government has refused to provide any documentation or evidence regarding the details of this surveillance, or even what agency conducted it.

Defendant contends that the reason no specifics have been provided for either the LAX surveillance on August 20-21 or Agent Maier's "consistent with primary residence" comment, is that the information was actually derived from unauthorized pinging, as noted above.  In fact, the government appears to have been not only illegally tracking defendant's cellular phone ending in 0259, they were also tapping and tracking a second cellular phone of Mr. Blackwell's without a single warrant to do so.

8

1

**IV.**

2

**MICHAEL BLACKWELL'S SECOND CELL PHONE**

3    Defense counsel is not ashamed to admit that he had long

4  been confused as to how the government connected two pieces of

5  information seemingly unrelated to the defendant; (1) that Mr.

6  Blackwell was looking for Myles Paul when Mr. Paul was arrested

7  in an unrelated[2] traffic stop in Illinois, and (2)that the person

8  they knew as Kevin Campbell was actually Michael Blackwell.

9  **A.    Government Tracked Blackwell's Second Cell Phone Without A**

10       **Warrant**

11    During the months of this criminal investigation involving

12  Mr. Blackwell in 2009, Mr. Blackwell had a second cellular phone

13  that he regularly used associated with the telephone number

14  (310)466-2259[3](hereinafter, the "Second Cell phone").   (Call

15  Detail Records attached as Exhibit F).   The government has never

16  acknowledged using this Second Cell phone in wiretaps or

17  tracking, or even knowing about it.

18    In the California Search Warrant Affidavit, Agent Bennett

19  states that Agent Maier in Pittsburgh deemed Mr. Blackwell to be

20  at Los Angeles International Airport on June 11, 2009, to take

21  the red-eye flight to Cleveland, Ohio, by using CSLI on his

22  telephone ending in 0259.   (7:11).   However, a review of the call

23  detail records shows that he never used telephone 0259 in the

24

---

25    [2]We assume.

26    [3]Mr. Blackwell will provide a declaration under penalty of perjury before the hearing

27  supporting this fact.

28

9

**MEMORANDUM IN SUPPORT OF SUPPLEMENT TO MOTION TO SUPPRESS
EVIDENCE OF ILLEGAL SEARCH; REQUEST FOR FRANKS HEARING**

1   vicinity of LAX at that time[4].  A review of the call detail

2   records of his Second Cell phone, however, shows that he made 5

3   phone calls that evening beginning at 10:43 p.m. from the cell

4   towers associated with LAX.  In other words, agents were using

5   pen registers from the Second Cell phone which they did not have

6   authorization to view.  They continued to track him in Cleveland

7   and back to Los Angeles the next day.  The government then

8   "recreated" their investigation by supposedly comparing flight

9   records.

10       This phone was also in use when unnamed "agents and/or law

11  enforcement officers" were surveilling Mr. Blackwell from LAX to

12  the Downey residence two months later on August 20-21, 2009.  On

13  August 20, 2009, Mr. Blackwell last used his phone ending in 0259

14  at 7:06 p.m.  He did not use it again until August 21, 2009, at

15  1:20 p.m.  Therefore, the United States could not have been using

16  that phone to track him legally.  In fact, Mr. Blackwell's phone

17  was completely turned off and the government wouldn't have even

18  been able to ping him with a warrant.  However, Mr. Blackwell did

19  use his Second Cellular phone at 10:43 p.m. on August 20, 2009,

20  and continued using it in the early morning hours of August 21,

21  2009, until he arrived at the residence in Downey.

22  ///

23  ///

24  ///

25

26      [4]Mr. Blackwell was soft pinged with the 600 number four times on June 11, 2009; however,
27  he was not at LAX for those pings.

28
**MEMORANDUM IN SUPPORT OF SUPPLEMENT TO MOTION TO SUPPRESS
EVIDENCE OF ILLEGAL SEARCH; REQUEST FOR FRANKS HEARING**

**B.    The Government Wiretapped Blackwell's Second Cell Phone And Listened To Privileged Attorney-Client Conversations Without A Warrant**

What is perhaps most disturbing, however, is that it appears the government was listening on this second cellular phone during conversations between Mr. Blackwell and his attorney in clear violation of not only the Fourth, but the Sixth Amendment.  On June 12, 2009, Mr. Blackwell had a number of conversations with his attorneys in Los Angeles using his Second Cellular phone. During these conversations, Mr. Blackwell discussed the seizure and arrest involving Myles Paul in Illinois.  This information was used by the government to track down the arrest of Myles Paul in Illinois.

Although the seizure and arrest of Mr. Paul is mentioned numerous times in the affidavits and Title III applications as probable cause that Mr. Blackwell was involved in drug trafficking, nowhere does it ever indicate how the government just happened to determine that a random unplanned arrest by Illinois State Police was related to a drug trafficking ring under federal investigation in Cleveland and Pittsburgh.  Now, of course, it makes sense why the government made up the six phone calls with Mr. Blackwell and made them appear to have taken place just prior to Mr. Paul being arrested[5].  Agents were attempting to recreate evidence they had already illegally uncovered.  The only other "evidence" that could possibly be interpreted to

---

[5]More on this later.

**MEMORANDUM IN SUPPORT OF SUPPLEMENT TO MOTION TO SUPPRESS EVIDENCE OF ILLEGAL SEARCH; REQUEST FOR FRANKS HEARING**

involve Mr. Paul were incredibly vague references involving an
unknown male speaking with Mr. Blackwell on June 12, 2009, about
walking by something looking for someone.  The only time that Mr.
Paul or the State of Illinois were mentioned was on Mr.
Blackwell's Second Cellular phone in conversations with his
attorney.

Finally, it now appears to be very likely that the
unauthorized wiretaps of this second phone, coupled with the
illegal tracking of both phones, helped to reveal Mr. Blackwell's
identity.  Contrary to the government's claim that his identity
was determined by lucking into a comparison of an ten year old
drivers license from California with a new one from Nevada, it is
likely that the agents listened to conversations about him on the
Second Cellular phone and tracked him to the home his parents
owned in 1999.  This address was on his California Drivers
license in 1999, which a simple search would later turn up.

**V.**

**MYLES PAUL'S PHONE RECORDS**

There has already been motion and discussion regarding six
alleged telephone calls between Myles Paul and Michael Blackwell
that took place on April 10, 2009 (Defendants have alleged that
the affidavit mis-characterized these calls, both regarding the
date they took place and the number of calls).  Myles Paul's
billing records show, however, that ***no*** calls to Mr. Blackwell's
phone were made or received on those dates.  (Exhibit G).  Call
detail records from AT&T for those dates have been subpoenaed to

12

**MEMORANDUM IN SUPPORT OF SUPPLEMENT TO MOTION TO SUPPRESS
EVIDENCE OF ILLEGAL SEARCH; REQUEST FOR FRANKS HEARING**

the Court).

## VI.

### FRANKS HEARING IS NECESSARY

If it wasn't already, it is now clear that absent the Court
granting defendants' motions to dismiss entirely, a hearing
pursuant to Franks v. Delaware is necessary.  The defendants have
made well beyond a substantial showing of intentional government
misstatements and misconduct.  There have been a number of
allegations made in this supplement with varying degrees of
proof; however, there is no question that the 587 zero-second
calls from a 600 area code phone number that exist only in the
governments pen register records is substantial evidence of
illegal and deceitful activity by the government.  The time is
well past due for the full truth to come out.  The defendants
have contended for four years that the government illegally
tracked them, and they were right.  Whether, in the end, the
surreptitious activities of government agents result in
convictions or dismissals for these two defendants, we all
deserve to know the truth about the government activities that
led to their capture.

## VII.

### CONCLUSION

Based on the foregoing, all evidence derived from the
illegal and unconstitutional acts of government agents must be
suppressed and the case dismissed in its entirety.  In the
alternative, defendants request a Franks hearing to determine the

13
**MEMORANDUM IN SUPPORT OF SUPPLEMENT TO MOTION TO SUPPRESS
EVIDENCE OF ILLEGAL SEARCH; REQUEST FOR FRANKS HEARING**

1  complete extent of government misconduct.

2

3  Date: September 27, 2013          Respectfully submitted,

4

5                                   ____/s/ Jerry Kaplan___
                                     JERRY KAPLAN
                                     JOSEPH BENINCASA
6                                    Attorney for Defendant
                                     MICHAEL BLACKWELL
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                   14